UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 18-20214

v.        Hon. Paul D. Borman

JAQUEL OWENS,

        Defendant.
_____/

## SUPPLEMENT TO JAQUEL OWENS' MOTION FOR COMPASSIONATE RELEASE

Jaquel Owens is at severe risk from the COVID-19 pandemic spreading throughout the Bureau of Prisons because he has medical conditions that could seriously harm or kill him if he becomes sick. Over the past twenty (20) months in custody, he has shown significant rehabilitation and if released, he has a community of people who will provide him both a safe place to live and employment.

Mr. Owens has multiple health conditions that make him particularly susceptible to the lethal effects the virus. He is morbidly obese, weighing 306 pounds at 5' 9" tall, equating to a Body Mass Index (BMI) of **more than 30.** Additionally, Mr. Owens has hypertension, diabetes, and sleep apnea which has been widely recognized as factors that increases the risk of COVID-19. These conditions are only worsening due to the current circumstances of his confinement.

1

Even as the spread of the virus has decreased in some parts of the country, the infection rate in prisons has only continued to climb. As it stands, more than 7,000 federal prisoners have contracted the virus, and at least 94 have died from it. https://www.bop.gov/coronavirus/. Mr. Owens is incarcerated at FCI Milan, where he was quarantined for eight (8) days due to an assumption that he had contracted the COVID-19 virus. These conditions are not something this court could have anticipated at sentencing.

Mr. Owens has a three-year-old son and a family that will welcome him home and employment opportunities to assist his reentry. This Court should grant him compassionate release under 18 U.S.C. § 3582(c)(1)(A).

### I.  **Procedural History**

Mr. Owens in 2018 was charged in a suspending indictment in Count (1) Distribution of a Controlled Substance- Heroin, 21 U.S.C sec 841(a)(1), Count (2) Distribution of a Controlled Substance- Heroin, 21 U.S.C. sec. 841(a)(1), Count (3) Distribution of a Controlled Substance – Heroin, 21 U.S.C. sec. 841(a)(1), Count (4) Distribution of a Controlled Substance – Heroin, 21 U.S.C. sec. 841(a)(1), Count (5) Distribution of a Controlled Substance – Heroin, 21 U.S.C. sec. 841(a)(1), Count (6) Felon in Possession of a Firearm, 18 U.S.C. sec. 922(g)(1), and Count (7) 18 U.S.C. sec 924(c).

Mr. Owens was released on bond and complied with the conditions of bond for approximately one (1) year. He was employed while on bond. The guideline imprisonment rage for Mr. Owens was 70 to 80 months. This Court sentenced Mr. Owens to a below guidelines sentence of 40 months on Count (6) Felon in Possession of a Firearm, 18 U.S.C. sec 922(g)(1) to be served at FCI Milan with a recommendation for Mr. Owens to participate in the Residential Drug Abuse Program (RDAP).

**II.     Legal Standard for Compassionate Release**

The First Step Act significantly changed § 3582, allowing defendants to directly petition courts for relief instead of leaving relief decisions solely with the BOP. 18 U.S.C. § 3582(c)(1)(A). "The First Step was passed against the backdrop of a documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants." *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020). The compassionate release statute, as amended by the First Step Act, authorizes district courts to grant relief whenever "extraordinary and compelling reasons" warrant a reduction, consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) and the Sentencing Commission's applicable policy statements—regardless of the BOP's position.

### III.  Owens has Complied with the 30-day Rule under § 3582(c)(1)

Section 3582(c)(1)(A)(i) generally requires exhaustion of administrative remedies. Mr. Owens requested compassionate release within the BOP on May 27, 2020, more than 30 days ago. (Ex. 1, Inmate Request to Staff) Thus, there has been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," *id*. § 3582(c)(1)(A)(i), and there is no exhaustion barrier to him requesting relief from this court.

### IV.  Extraordinary and Compelling Reasons Warrant Release

As the BOP faces an escalating health crisis because of COVID-19, several courts, including in this district, are exercising their authority to grant release under § 3582(c)(1)(A)(i), to nonviolent inmates who are at risk of death or serious illness from COVID-19. *See, e.g., United States v. Saladrigas*, No. 13-cr-20913, ECF No. 129 (E.D. Mich. May 13, 2020) (Borman, J.); *United States v. Al-Jumail*, No. 12-20272, 2020 WL 2395224 (E.D. Mich. May 12, 2020) (Hood, C.J.); *United States v. Hunt*, No. 18-20037, 2020 WL 2395222 (E.D. Mich. May 12, 2020) (Hood, C.J.); *United States v. Reddy*, No. 13-CR-20358, 2020 WL 2320093, at *4 (E.D. Mich. May 11, 2020) (Leitman, J.); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (Levy, J.); *United States v. Saad*, No. 16-20197, 2020 WL 2251808, at *1 (E.D. Mich. May 5, 2020) (Hood, C.J.); *United States v. Atwi*, No. 18-20607, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020) (Michelson, J.);

*Samy v. United States*, No. CR 16-20610-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020) (Tarnow, J.); *Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) (Tarnow, J.).

Release is consistent with the Sentencing Commission's policy statements for two reasons. First, Mr. Owens's current health condition and incarceration during this pandemic "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [he] is not expected to recover." U.S.S.G. § 1B1.13, cmt. n. 1(A)(ii); *Reddy*, 2020 WL 2320093, at *7; *Amarrah*, 2020 WL 2220008, at *6. He also presents "Other Reasons" under U.S.S.G. § 1B1.13, cmt. n. 1(D), warranting compassionate release, *Miller*, 2020 WL 1814084, at *3, because prison populations are subject to heightened vulnerability because of COVID-19.

### A. Mr. Owens's health places him at high risk of death or serious illness from COVID-19.

Mr. Owens has multiple heath conditions that will increase the lethality of the virus: foremost among these are obesity and hypertension. "The CDC's data shows that both hypertension and obesity materially increase the risk that a person who contracts COVID-19 will be hospitalized, and that hypertension materially increases the chance of death from COVID-19." *United States v. Shannon*, No. 13 CR 535, 2020 WL 3489491, at *3 (N.D. Ill. June 26, 2020).

*Obesity*. At the time of sentencing, Mr. Owens was 5' "9" and weighed 307 pounds. The CDC considers individuals with a BMI of 30 or higher to be at an increased risk of severe illness from COVID-19.[1] With a BMI of over 30, Mr. Owens is at an extremely increased risk. Research indicates that individuals less than 60 years old, with a BMI above 35, are **3.6 times** more likely to need critical medical care related to COVID-19 than those with a BMI less than 30. Jennifer Lighter, et al., *Obesity in Patients Younger Than 60 Years Is a Risk Factor for COVID-19 Hospital Admission*, Clinical Infectious Diseases (2020), https://academic.oup.com/cid/advance-article/doi/10.1093/cid/ciaa415/5818333. Since Mr. Owens's BMI is 45.3 which is well above 35, (Ex. 2, 2019 Medical Record) Several courts have considered obesity, among other conditions, as an extraordinary and compelling reason to grant release. *See, e.g., United States v. Readus,* No. 16-20827-1, 2020 WL 2572280, at *2 (E.D. Mich. May 21, 2020) (hypertension and obesity); *United States v. White,* No. 13-CR-20653-1, 2020 WL 2557077, at *3 (E.D. Mich. May 20, 2020) (same); *United States v. Ullings,* No. 1:10-CR-00406, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020) (same); *United States v. Foreman*, No. 3:19-CR-62, 2020 WL 2315908, at *3 (D. Conn. May 11, 2020) (same).

---

[1] CDC, *People of Any Age with Underlying Medical Conditions*, June 25, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

*Hypertension*. Mr. Owens has hypertension and takes daily medication for it. (Ex. 3, 2019 Medical Record) Many courts, including several in this district, "have identified hypertension as an underlying medical condition that renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic." *United States v. Sanders*, No. 19-cr-20288, ECF No. 35, PgID 202–03 (E.D. Mich. Apr. 17, 2020) (citing *United States v. Patino*, No. 18-cr-20451, 2020 WL 1676766, at *2 (E.D. Mich. Apr. 6, 2020)); *United States v. Doshi*, No. 13-cr-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020) (recommending that prisoner with hypertension and diabetes be placed in home confinement); *United States v. Mines*, No. 4:18-cr-00552, 2020 U.S. Dist. LEXIS 112175, at *3 (N.D. Ohio June 26, 2020) (granting release to an inmate with hypertension); *Perez-Perez v. Adduci*, No. 20-10833, 2020 WL 2305276, at *5–6 (E.D. Mich. May 9, 2020) (noting that a prisoner who suffered from hypertension faced a heightened risk of severe medical consequences or death if the prisoner contracted COVID-19); *White,* 2020 WL 2557077, at *3 (granting compassionate release to inmate with hypertension).

*Diabetes.* Mr. Owens also suffers diabetes. (Ex. 4, 2020 Medical Records.) "Courts have found that the combination of prediabetes and obesity have been sufficient to warrant release." *United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (collecting cases). The CDC recognizes diabetes as creating a serious risk of illness from COVID-19, and courts have thus

7

recognized that a person approaching status as a diabetic also are at increased risk. *See Cotton v. United States*, No. CR 16-20222-8, 2020 WL 3488752, at *3 (E.D. Mich. June 26, 2020) (granting release to a person with prediabetes).

**PTSD.** As documented in the PSR, Mr. Owens suffers from PTSD as a result of Mr. Owens being a drive by shooting victim, which he still suffers physically from. While this conditions at first glance may not appear to present extraordinary conditions in light of the COVID-19 pandemic, "'[g]rowing evidence demonstrates that PTSD, anxiety/stress, and depression can lead to decreased immune response and increased risk of infections.'" *Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667, at *4 (N.D. Cal. Apr. 12, 2020) (quoting a medical opinion and granting release to immigration detainee). The "weakened immunity due to mental-health disorders can put detainees 'at increased risk of contracting and suffering from more severe forms of COVID-19.'" *Id.*; *see United States v. Johnson*, No. 15-CR-125 (KBJ), 2020 WL 3041923, at *10 (D.D.C. May 16, 2020) (granting compassionate release to inmate with PTSD). In addition, at least one court has recognized that the BOP lockdown from the pandemic places people suffering these conditions at increased risk of harm. *See, e.g., United States v. Pina*, No. 18-CR-179 (JSR), 2020 WL 3545514, at *2 (S.D.N.Y. June 29, 2020). As Judge Rakoff explained in *Pina*—for an inmate at FCI Allenwood—confinement to a "cell for 22 hours a day cannot help but exacerbate his depression and anxiety." *Id.* at 2.

***Combination of conditions***. The CDC states: "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."[2] As Mr. Owens has shown, he has more than one condition that puts him at an increased risk.

As explained in *Loyd v. United States*, No. CR 15-20394-1, 2020 WL 2572275, at *3 (E.D. Mich. May 21, 2020), even if these "conditions do not independently and perfectly fit the definition of severity, as outlined by the CDC, all of his conditions compounded still place [the movant] in a much more vulnerable position than a healthy person, if he were to get COVID-19." Considering obesity alone, Mr. Owens is 3.6 times more likely to need critical care if he contracts COVID-19, and he is much less likely to get the care he needs in a carceral setting. Mr. Owens's fear for his safety is genuine. At home, he will be able to access medical care at the first sign of symptoms, but in prison the same may not be true.[3]

---

[2] *People of Any Age with Underlying Medical Conditions*, CDC, June 25, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[3] Particularly in light of the fact that staff at BOP facilities have been found to ignore or minimize inmates' COVID-19 symptoms. *See* Keri Blakinger & Keegan Hamilton, *"I Begged Them To Let Me Die": How Federal Prisons Became Coronavirus Death Traps*, Marshall Project, https://www.themarshallproject.org/2020/06/18/i-begged-them-to-let-me-die-how-federal-prisons-became-coronavirus-death-traps.

9

### B. COVID-19 poses acute risks to individuals in custody.

FCI Milan currently has two (2) positive inmates, one (1) positive staff, three (3) deaths, ninety-eight (98) "recovered" inmates, and fifty (55) "recovered" staff. Additionally, only 340 of the inmates at FCI Milan have been tested, and 93 of those came back positive. [4] Mr. Owens explained to counsel some of the concerns he has about the conditions at FCI Milan. Specifically, inmates are not practicing social distancing or anything at this point. Mr. Owens was sent to quarantine from April 4th-14th surrounded by other sick inmates and the prison did not even administer a COVID-19 test to determine if he had the virus. FCI Milan only took his temperature and blood pressure.

As research has shown, individuals who have been infected are most likely to spread the virus in the 48 hours before they start to experience symptoms, and some people may be contagious without experiencing symptoms at all.[5] Although, there are confirmed positive cases at FCI Milan, District courts have also granted motions for compassionate release where there were no confirmed cases in a particular facility—in fact, low testing rates were frequently central to the consideration.

---

[4] FCI Milan, https://www.bop.gov/locations/institutions/alf/ (last visited August 4, 2020); COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited August 4, 2020).

[5] *If You've Been Exposed to the Coronavirus*, Harvard Health, July 2, 2020, https://www.health.harvard.edu/diseases-and-conditions/if-youve-been-exposed-to-the-coronavirus.

*See United States v. Williams-Bethea*, No. 18-CR-78 (AJN), 2020 WL 2848098, at *5 (S.D.N.Y. June 2, 2020) ("[T]esting remains limited at FCI Danbury, so the Court cannot conclude that the lack of confirmed positive cases means that no inmates at the Defendant's facility carry the virus."); *United States v. Schafer*, No. 6:18-CR-06152 EAW, 2020 WL 2519726, at *2 (W.D.N.Y. May 18, 2020) ("[W]ithout knowing the percentage of the prison population that has been tested, the fact that there are no positive COVID-19 cases provides little insight into whether the virus has reached the facility."); *United States v. Ben-Yhwh*, No. CR 15-00830 LEK, 2020 WL 1874125, at *4 (D. Haw. Apr. 13, 2020) (granting relief even when the facility had no confirmed COVID cases).

A lack of positive cases likely comes from BOP testing only when an inmate is nearing the point of hospitalization. *See United States v. Rountree*, No. 1:12-CR-0308 (LEK), 2020 WL 2610923, at *7 (N.D.N.Y. May 18, 2020). **Release is consistent with the § 3553(a) factors.**

Mr. Owens has a release plan which involves living with his family, gaining employment, and protecting himself from COVID-19. Mr. Owens will live with his mother, who has lived in the City of Eastpointe for eight (8) year. Mr. Owens will have his own room where he can quarantine much more effectively than his current environment. Mr. Owens' mother's address and contact information was provided to pre-trial services while he was on bond.

11

Mr. Owens has a son, Jaquel Owens, Jr. who is now three (3) years old. Mr. Owens, son resides with the child's mother however, Mr. Owens will be able to spend time with his son while living in his mother's home. Mr. Owens has demonstrated that he understands the responsibility of being a parent, and he is ready to take that responsibility seriously.

Upon release, Mr. Owens will have steady employment. He hopes to return to GFL Waste Management as a diesel mechanic, where he was employed prior to his incarceration. Mr. Owens also hopes to return to school at Detroit Training, to receive a certification as a diesel mechanic.

Mr. Owens has used his time while incarcerated to improve himself. Mr. Owens has not received any disciplinary action while incarcerated. He has completed forty (40) hours, which is approximately 85 percent of a nonresidential drug treatment program he was ordered to complete by the court. He also maintained employed while at FCI Milan.

Given the time Mr. Owens has already spent incarcerated, a reduction to time served would still reflect the seriousness of his offense. Mr. Owens has served over half of his sentence. District courts have granted release where other defendants served less time proportionally. *See Loyd*, 2020 WL 2572275, at *1 (30% of sentence served); *United States v. Delgado*, No. 3:18-CR-17-(VAB)-1, 2020 WL 2464685, at *2 (D. Conn. Apr. 30, 2020) (24% of sentence served); *United States v. Young*, No.

CR19-5055 BHS, 2020 WL 2614745, at *4 (W.D. Wash. May 22, 2020) (25% of sentence served); *United States v. Pabon*, No. CR 17-165-1, 2020 WL 2112265, at *1 (E.D. Pa. May 4, 2020) (30% of sentence served).

Releasing Mr. Owens will not diminish the deterrent effect of his sentence. When considering deterrence, medical issues, and Mr. Owens desire to be a father to his 3 year old son, there is no reason to think that continued incarceration instead of home confinement will be necessary to protect the public.

When considering future criminal activity, Mr. Owens, does not appear to be the type of person to continue to engage in criminal activity. While incarcerated, Mr. Owens has incurred no marks on his disciplinary record,

Furthermore, Mr. Owens has demonstrated that he can adhere to release conditions. For approximately one (1) year, Mr. Owens was released on bond without incident. Mr. Owens's conduct while on pretrial release and his conduct while incarcerated confirms that he can comply with the law and being a functioning member of society. Additionally, Mr. Owens recidivism level has been reduced from a medium patter score to a low patter score. Given his family support, severe health issues, and the evidence of his rehabilitation, this Court should not hesitate to grant his request for compassionate release.

## **Conclusion**

Jaquel Owens respectfully requests that the Court grant this motion for compassionate release.

Respectfully submitted,

/*s/ Christopher W. Quinn, II*_____
Attorney Christopher W. Quinn, II
(P69483)
400 Monroe, Suite 290
Detroit, Michigan 48226
PHONE:313-967-7847
E-MAIL: chris@winwithattorneyquinn.com

Date:  August 12, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 18-20214

v.        Hon. Paul D. Borman

JAQUEL OWENS,

        Defendant.
_____/

**CERTIFICATE OF SERVICE**

I certify that, on August 12, 2020, I filed this document using the CM/ECF system, which will send notification of filing to opposing counsel of record.

        */s/Christopher W. Quinn, II*
        Attorney for Jaquel Owens