UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JACQUEL DAVON OWENS,

    Defendant.
_____/

Case No. 18-cr-20214
District Judge Paul D. Borman

**ORDER GRANTING DEFENDANT JACQUEL DAVON OWENS' MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)**

## BACKGROUND

On August 12, 2020, Defendant's Counsel filed a "Supplement to Jacquel Owens' Motion for Compassionate Release" (ECF No. 38), contending that his medical conditions--morbid obesity, hypertension, diabetes, and sleep apnea, could seriously harm or kill him if he were to contract COVID-19. (*Id*. at Page ID 171.) Defendant also contends that he has shown significant rehabilitation during his 20 months in custody, and that he has a community of people who will provide him both a safe place to live and employment. (*Id*.) Defendant also emphasizes the dangers of COVID-19, particularly at FCI-Milan. (*Id*. at page ID 172.)

In December 2018, Defendant was charged in a Superseding Indictment with Five Counts of Distribution of Heroin, 21 U.S.C. § 841(a)(1), and one Count of

Being a Felon in Possession of a Firearm (FIP), 18 U.S.C. § 924(g). He was released on bond and complied with the bond conditions prior to being sentenced on his plea to the FIP Count to a below-Guideline (70 to 80 months) sentence of 40 months incarceration. (*Id.* at Page ID 173.)

The Court accepts, and the Government does not challenge, his allegation that he has complied with the administrative exhaustion requirement within the BOP, and that this case is properly before this Court under 18 U.S.C. § 3582(c)(1)(A).

Defendant contends that "Extraordinary and Compelling Reasons Warrant Release." (*Id.* at Page ID 174)--"That his current health conditions and incarceration during this pandemic 'substantially diminishes the ability of the Defendant to provide self-care within the environment of a correctional facility from which [he] is not expected to recover.' U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)." (*Id.* at Page ID 175.)

Defendant first discusses his obesity:  he is 30 years old, 5' 9" tall, weighs 307 lbs. and has a BMI above 35 (45.3). He asserts, noting CDC publications, that this creates a serious health risk factor if he contracts COVID-19. (*Id.* at Page ID 176.)

Defendant next discusses his hypertension for which he takes daily medication, (*Id.* at Page ID 177), and asserts that this also creates a higher risk of

serious illness or death if he contracts COVID-19 at FCI-Milan. (*Id*. at Page ID 177.)

Defendant next discusses diabetes (pre-diabetes), asserting that "the combination of pre-diabetes and obesity have been sufficient to warrant release." (*Id*.)

Defendant next discusses his Post-Traumatic Stress Disorder (PTSD) as a result of "being a drive-by shooting victim [in 2017], which he still suffers physically from." (*Id*. at Page ID 178.)

He concludes his medical condition discussion by citing a CDC report that states: "The more underlying medical conditions someone has, the greater their risk for severe illness from COVID-19." (*Id*. at Page ID 179.)

Defendant notes that FCI-Milan currently has 2 COVID-positive inmates (98 recovered), 55 staff recovered, and had three deaths due to COVID-19. (*Id*. at Page ID 180.)

Defendant presents a release plan: living with his mother, with his own room to quarantine (*Id*. at Page ID 181), and spending time with his three-year-old son, who lives with the child's mother. (*Id*. at Page ID 182.)

Finally, Defendant contends that he has rehabilitated himself: He has not received any BOP disciplinary actions, and is employed at FCI-Milan. (*Id*.)

The Government filed a Response in Opposition on August 17, 2020. (ECF No. 40.) The Government contends that "although Owens' heightened risk from COVID-19, based on his medical conditions, qualify as an 'extraordinary and compelling reason' for release under § 1B1.13(1)(A), and cmt. n.1(A), Owens is not otherwise eligible for release…[because] Owens' offense and criminal history make him a continued danger to the community, which precludes release under U.S.S.G. § 1B1.13(2). (*Id*. at Page ID 216-217.)

The Government also notes that after Owens' arrest at his last sale of heroin, with his infant son in the car, a search warrant was executed at his residence that produced a .45 caliber handgun with two loaded magazines, 20 rounds of .45 caliber ammunition, drug scales, five grams of heroin, and thirty 30 Mg. pills of Oxycontin. (*Id*. at Page ID 217-218.)

Defendant is 30 years old and his expected release date from his 40-month sentence is January 10, 2022, less than 20 months from today.

The Government contends that the Court should deny Defendant's Motion for Compassionate Release because he is ineligible under the mandatory criteria in U.S.S.G. § 1B1.13, that Congress directed the Commission to develop in 18 U.S.C. § 3582(c)(1)(A) and in 28 U.S.C. § 994(t). (*Id*. at Page ID 226-27.) That latter provision states:

  (t)  The Commission, in promulgating general policy statements regarding the sentencing modification provision in § 3583(c)(1)(A) of Title 18, should describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone, shall not be considered an extraordinary and compelling reason.

The Government posits that, "§ 1B1.13 remains binding," and "cabins compassionate release to a narrow group of non-dangerous defendants who are most in need, and …limits 'extraordinary and compelling reasons' to defendants who are most in need, to four categories:

  (1) the inmates' medical condition;
  (2) the inmates' age;
  (3) the inmates' family circumstances; and
  (4) other reasons as determined by the Director of the Bureau of Prisons."

(*Id.* at Page ID 228.)

The Government states that "The COVID-19 pandemic does not by itself qualify as a type of inmate-specific condition permitting compassionate release." (*Id*.) The Government cites to the Sixth Circuit decision in *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020) which stated that the BOP has implemented an effective protocol for dealing with COVID-19, including increased placement of federal prisoners in home confinement. (Government Response, ECF No. 40, at Page ID 220-21.)

The Government concedes that Defendant's medical records "confirm that he has several medical conditions, including type II diabetes and mellitus, hypertension and obesity," and that the CDC has identified diabetes and obesity as conditions presenting a possible "increased risk of severe illness from COVID-19" for "people of any age." Thus, the Government concludes "that Owens has satisfied the first eligibility threshold for compassionate release during the pandemic. *See* USSG § 1B1.13(1)(A) & cmt. n.1(A)." (*Id*. at Page ID 229.) But the Government contends:

> Nevertheless, Owens remains ineligible for compassionate release because of the continued danger that he poses to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

(*Id*. at Page ID 229.) The Government directs the Court's attention to Defendant's criminal history and his conduct in the instant case, and the required Court discussion of the § 3553(a) factors. The Government also contends that the Defendant has served less than 50% of the sentence, which can be considered by the District Court under *United States v. Kinkaid*, 2020 WL (6th Cir., May 18, 2020).

Defendant filed a Reply on August 27, 2020. (ECF No. 41.)  Defendant notes that "The government doesn't meaningfully contest that severe obesity during

6

the pandemic is an 'extraordinary and compelling reason' for release…and recognizes Owens' obesity and diabetes is a CDC risk factor for COVID-19…., but then says that he is nevertheless ineligible for compassionate release under § 1B1.13(2), because he is dangerous." (*Id*. at Page ID 236.)

Defendant's Reply further contends that the Government overlooks significant authority regarding hypertension, that is not now being controlled by exercise or diet, because at FCI-Milan, inmates have gone several months into lockdown…causing problems: Owens' blood pressure in April was 143/88, which is higher than normal. (Ex. 1, 2020 Medical records). (ECF No. 41, Page ID 238.)

Defendant asserts that pre-diabetes is a risk factor, particularly when combined with obesity. (*Id*.)

Defendant's Reply recognizes that "no one disputes that [this offense] was profoundly serious." On the other hand, Defendant states that "the Government ignores Owens' evidence of rehabilitation….he has no marks on his [prison] disciplinary history…And [complied] when he was on bond with this Court…" (*Id*. at Page ID 239.)

## DISCUSSION

The Court notes that the Government acknowledges that each of the four controlled buys by its informant "was for a small amount of heroin," and there was

no evidence that Defendant possessed a firearm during the sales. (Government Response, ECF No. 40, Page ID 217.) Indeed, after the last sale was consummated and Defendant was arrested and searched, no firearm was seized from him. On the other hand, in that last heroin sale, Defendant had his infant child in his car.

The Court recognizes that after the arrest the agent executed a search warrant at Defendant's residence and found a loaded .45 caliber handgun, 20 rounds of .45 caliber ammunition, digital scales, drug packaging, five gross grams of heroin, and thirty 30 Mg. pills of Oxycontin. (ECF No. 40, Page ID 217-218.)

The Court notes that as of September 11, 2020, Defendant will have served 18 months of his sentence; his projected release date of January 10, 2022 is 17 months away.

Defendant has a COVID-19 serious risk factor because of his high BMI score, combined with his high blood pressure score. The Court also recognizes that although Defendant has established that this may be "an extraordinary and compelling reason" in its consideration of Defendant's request for compassionate release, the end-of-the-day issue is whether, if released, Defendant would pose a danger to the safety of the community. That is the key issue that § 3582(c)(1)(A) requires the Court to determine in referencing (1) § 3553(a) factors, and (2) the applicable policy statements issued by the Sentencing Commission, to wit, 1B1.13,

and (3) in its determination whether Defendant is a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g).

The Court proceeds with this discussion:

Starting with the § 3553(a) factors:

(1) The Court finds that distribution of heroin is a serious offense. However, the Court notes that the sale were for small amounts of drugs and cash. Defendant's criminal history includes a drug conviction in 2007, an unarmed robbery conviction in 2008, a crack conviction in 2012, a retail fraud-3d conviction in 2013, and a heroin conviction in 2014 for possession of less than 25 grams.

Thus, apart from his 2008 unarmed robbery conviction, Defendant has not been convicted of any crimes of violence.

With regard to further discussion of Defendant's history and characteristics, the Court notes this statement from his mother contained in his PSR:

> I was young when I had him…about 20 year old. So, at this point, he's like my best friend. I go to him for everything. He helped me raise all of his siblings. I couldn't have done it without him. We are a close-knit family. (PSR, page 16, ¶ 61.)

The PSR also notes that Defendant was not in possession of a firearm at the time of his arrest, that the CI never indicated to agents that they had any knowledge of Owens carrying a firearm. At his plea hearing, Defendant indicated that he has a

9

        weapon in his home for personal protection because of his bad neighborhood, and because he has been shot three times in 2017 while at a local tire store. (PSR ¶ 92, page 22.)

(2)    While there is a need for the sentence to reflect the seriousness of the offense and promote respect for the law and deter criminal conduct, the Court finds that this is satisfied in this case by having only 17 months of his 40-month sentence left to serve.

        The Court further finds that given his rehabilitation in prison--work, no BOP discipline, and his lack of prior violent offense convictions, except for the 2008 unarmed robbery conviction, there is no need to protect the public from further crimes by this Defendant, nor any danger to the community from his release to home confinement.

To summarize: because the Court has determined that there is no danger to the community from his release, the Court can consider and apply the "extraordinary and compelling reasons" analysis, which supports the Court's conclusion that his BMI number (38.5) combined with his high blood pressure (hypertension) (143/88) make him more susceptible to suffering a serious medical condition that substantially diminishes his ability to self-care, were he to contract COVID-19 at FCI-Milan. Finally, the Court finds that he has submitted an appropriate plan for home detention.

## CONCLUSION

The Court grants Defendant Jacquel Davon Owens' Motion for Compassionate Release. The Court orders that Defendant be subjected to a 14-day quarantine before release.

SO ORDERED.

DATED:  September 10, 2020      s/Paul D. Borman
                                                      PAUL D. BORMAN
                                                     UNITED STATES DISTRICT JUDGE